UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| CAROL L. SISSOM, | ) |
| --- | --- |
| Plaintiff, | ) |
| vs. | ) CAUSE NO. 1:13-cv-882-WTL-TAB |
| ROBERT L. SNOW, et al., | ) |
| Defendants. | ) |

## ENTRY ON MOTION TO DISMISS

This cause is before the Court on the Defendants' motion to dismiss the Plaintiff's amended complaint. The motion is fully briefed and the Court, being duly advised, **GRANTS** the motion for the reasons set forth below.

### I. BACKGROUND

Plaintiff Carol Sissom is the author of *The LaSalle Street Murders*, a book that was published in 2006 and is the subject of a registered copyright. Sissom alleges that *Slaughter on North LaSalle*, a book written by Defendant Robert Snow and published in 2012, infringes her copyright of *The LaSalle Street Murders*.

The title of each book refers to a triple homicide that took place in 1971 in a home on LaSalle Street in Indianapolis. Sissom's book is, as she describes it, "the true story of [Sissom's] life and the relationship [she] had with the one and only man arrested for the most sensational, celebrated, gruesome, unsolved murders in the history of the city of Indianapolis, Indiana." *The LaSalle Street Murders* (Disclaimer Page). It is the firsthand account of how Sissom, a journalist, conducted an investigation into the murders twenty years after they occurred. Sissom's investigation led her to develop a relationship with Carroll Horton, whose former wife

had dated one of the murder victims. Based upon conversations with a man in prison for another murder in Florida, Sissom eventually concluded that Horton was one of the perpetrators of the murders. In fact, Horton was indicted for the murders in 1996, but the charges against him were dismissed.

Snow's book is divided into three parts. The first part describes, in detail, the initial investigation into the murders and the various suspects and theories that were considered and rejected by the detectives working the case. The second part of *Slaughter on North LaSalle* picks the story up in 1991and tells the story of Sissom's investigation and how it returned both police and media attention to the unsolved murders. Snow describes Sissom's investigation—or, more accurately, Sissom's account of her investigation—and criticizes many of the conclusions she drew, at times presenting contradictory information from other sources. In the final part of his book, Snow introduces Detective Sergeant Roy West and describes how West investigated a new lead regarding the LaSalle Street murders beginning in late 2000 and ultimately concluded that a man named Fred Harbison had committed the murders and had been hired to do so by another man, Ted Uland, who had been a suspect during the original investigation. Snow agrees with West's conclusion and considers the case closed.

## II. **DISCUSSION**

The Defendants move to dismiss Sissom's complaint on the ground that Snow's book does not infringe Sissom's book as a matter of law. In addressing the motion, the Court must construe the allegations in the amended complaint in the light most favorable to Sissom "in order to determine whether [she] has stated a plausible claim for copyright infringement." *Hobbs v. John*, 722 F.3d 1089, 1094 (7th Cir. 2013) (citations omitted). In addition to the allegations in the amended complaint, the Court has reviewed the two books at issue, which properly were

submitted by the Defendants as exhibits to their motion to dismiss. *See, e.g.*, *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) ("It is well settled that in deciding a Rule 12(b)(6) motion, a court may consider documents attached to a motion to dismiss if they are referred to in the plaintiff's complaint and are central to his claim." In effect, the incorporation-by-reference doctrine provides that if a plaintiff mentions a document in his complaint, the defendant may then submit the document to the court without converting defendant's 12(b)(6) motion to a motion for summary judgment.") (citation omitted).

To establish a copyright infringement claim, a plaintiff must prove "(1) ownership of a valid copyright; and (2) unauthorized copying of constituent elements of the work that are original." *Id.* (citations omitted). The Defendants do not dispute that Sissom owns a valid copyright; nor can they dispute that Snow used Sissom's book as a source for his own. They argue, however, that Snow used only facts from Sissom's book, and facts are not afforded copyright protection. The Court agrees.

"The mere fact that a work is copyrighted does not mean that every element of the work may be protected. Originality remains the *sine qua non* of copyright; accordingly, copyright protection may extend only to those components of a work that are original to the author." *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 348-49 (1991). For that reason, "no author may copyright facts or ideas" and the copyright of a work of nonfiction protects only "those aspects of the work—termed 'expression'—that display the stamp of the author's originality." *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 547 (1985). "[A] copyright does not prevent subsequent users from copying from a prior author's work those constituent elements that are not original—for example … facts, or materials in the

3

public domain—as long as such use does not unfairly appropriate the author's original contributions."  *Id.* at 578.

> Sissom's entire argument with regard to this issue is as follows:
>
> Snow refers to Sissom's book as his source for much of his middle chapter. The attached comparison (Ex. 1) derived from the citation list provided with the complaint shows that Snow paraphrased Sissom's book closely, even verbatim in places. This is substantially similar to Sissom's expression. It looks, to any reader of both books, as if Snow sat down with Sissom's book and paraphrased it, paragraph by paragraph, page by page. Snow retells Sissom's entire story, taking the heart of Sissom's work. No one quibbles with taking the facts of the murder, the location and manner of the killings, the dates. But to paraphrase Sissom's whole story goes too far. He took every key event in Sissom's book. He took the little details that were not needed for his critical purpose, but which enhanced his book. The case law calls for substantial similarity. How much more substantial can one get than to retell the entire story?

Sissom Brief at 5.  This argument fails to appreciate the critical distinction between facts and the original expression of those facts.  Sissom bases her argument on the "substantial similarity" between the second part of Snow's book and her own.  The problem is that two works that tell the same true story will by definition be substantially similar—at least in the way Sissom uses the term—but if the second author uses only the facts from the first he has not infringed on the first author's copyright, because the facts themselves are not protected by the copyright. "'[N]o matter how much original authorship the work displays, the facts and ideas it exposes are free for the taking…. [T]he very same facts and ideas may be divorced from the context imposed by the author, and restated or reshuffled by second comers, even if the author was the first to discover the facts or to propose the ideas.'" *Feist Publications, Inc.*, 499 U.S. at 349 (quoting Ginsburg, *Creation and Commercial Value: Copyright Protection of Works of Information*, 90 Colum.L.Rev. 1865, 1868 (1990)).

The remainder of Sissom's brief devoted to this issue consists of a dozen or so pages of passages from Snow's book that she claims are substantially similar to passages from her own

4

book.  What Sissom has failed to do is identify the original expression in each—indeed in any—of the passages she cites as infringing.  Indeed, she has failed to provide any analysis at all, essentially just setting out pairs of passages—194 pairs in all including the exhibit filed with her brief—and leaving it to the Court to identify the copyrightable expression amidst the uncopyrightable facts and then determine whether Snow copied any of the former or simply used the latter.  "It is not this court's responsibility to … construct the parties' arguments," *Draper v. Martin*, 664 F.3d 1110, 1114 (7th Cir. 2011), and the Court declines to do that in this case.

That said, the Court has reviewed both the books and the quoted pairs pointed to by Sissom and makes the following observations.  First, the style of the two books is markedly different, and Snow's book maintains the same style throughout.  Therefore, Part Two of Snow's book is not substantially similar to Sissom's book in that regard.  Second, Snow relates the story of Sissom's investigation into the murders chronologically; he did not copy any unique manner of organizing or revealing the facts from Sissom.  Finally, many of the quoted pairs included in Sissom's list are text book examples of Snow simply repeating a fact from Sissom's book without copying Sissom's original take on that fact. For example, Sissom says in her book:  "I figured I must have watched too many Columbo episodes as a child, because I naturally assumed that a) when you find a killer b) you go to the cops c) they go out and arrest him d) the bad guy goes to jail e) everyone lives happily ever after."  This passage includes identifiable elements of expression (e.g., the television show allusion, the list format); however, the allegedly infringing passage in Snow's book includes none of them, but simply reads "She said she felt certain that the prosecutor would immediately issue an arrest warrant for Horton."  Similarly, in Sissom's book she describes a conversation as follows:  "'Did you ever think your ex-husband, Rock Norton, killed Bob?'  I asked.  There was deadly silence on her end of the phone."  "'I-I-I don't

5

know,' she whispered." The original elements of Sissom's description are simply not present in Snow's account: "[Sissom] also claimed that when she asked Diane if she thought her husband might have been the killer on North LaSalle Street, Diane told her after a few moments that she didn't know." There are numerous other examples, but one more will suffice to make the point. Sissom's book contains the following passage: "The adrenaline inside me was indescribable. Fear was in my throat as I tried not to look to the left or to the right. I had to get out of the restaurant and the parking lot without Rock following me." The facts expressed in this passage are (1) Sissom became afraid during her dinner with Horton and; (2) Sissom realized that she needed to leave the restaurant and ensure that Horton did not follow her. Snow expresses those facts this way: "She got up and hurried out, terrified that Horton would follow her."

Sissom has a very narrow view of the facts that are not copyrightable in her book, asserting, without authority, that while the very basic facts of the murders fall into that category, the details of her story do not. Essentially her argument confuses factual details with copyrightable expression. For example, if Sissom lived in an orange house with purple polka dots during her investigation, that would be a fact. The color of her house is irrelevant to her investigation of the murders, so that detail would not be necessary to tell her story and including it in her book might simply serve to make her story more colorful (pun intended). But that does not render it any less a fact. Because it is a fact, Snow also could include it in his book with impunity, because, as a fact, it was not subject to copyright protection. If, on the other hand, Sissom described her house as "vivid orange with bright purple polka dots the size of manhole covers sprinkled liberally across the façade, bringing to mind a zoo animal from a Dr. Suess book," Snow could describe her house as orange with purple polka dots, but likely could not add

that it "looked like something from a children's book" without running afoul of Sissom's copyright protection in the original expression she used to describe her house.

Sissom has failed to identify for the Court any particular original expression in her book—as opposed to a fact—that Snow used in his book. Accordingly, her copyright infringement claim fails as a matter of law, and the Defendants' motion to dismiss (dkt. no. 22) is **GRANTED**. In light of this ruling, the Defendants' motion for oral argument (dkt. no. 24) is **DENIED AS MOOT**.

SO ORDERED: 05/08/2014

*[signature: William T. Lawrence]*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification